Stephanie B. Garlock (*pro hac vice* application pending)
Allison M. Zieve (*pro hac vice* application pending)
Wendy Liu (*pro hac vice* application pending)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009-1001
Telephone:     (202) 588-1000
Email:         sgarlock@citizen.org
               azieve@citizen.org
               wliu@citizen.org

Michael W. Bien – 096891
Gay Crosthwait Grunfeld – 121944
Van Swearingen – 259809
Adrienne Spiegel – 330482
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:     (415) 433-6830
Facsimile:     (415) 433-7104
Email:         mbien@rbgg.com
               ggrunfeld@rbgg.com
               vswearingen@rbgg.com
               aspiegel@rbgg.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RISE ECONOMY; NATIONAL COMMUNITY REINVESTMENT COALITION; and WOODSTOCK INSTITUTE,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau; and CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>　　　　Defendants. | Case No. 5:25-cv-10481-EJD<br><br>**PLAINTIFFS' MOVING SEPARATE STATEMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: March 5, 2026<br>Hearing Time: 9:00 AM<br>Judge: Hon. Edward J. Davila<br>Place: San Jose<br><br>Date Filed: December 9, 2025<br>Trial Date: None set |

Pursuant to Section V.B.1 of the Court's Standing Order for Civil Cases, Plaintiffs Rise Economy, National Community Reinvestment Coalition, and Woodstock Institute respectfully submit the following Moving Separate Statement in support of Plaintiffs' Motion for Summary Judgment:

| Claim or Defense | Moving Party's Undisputed Facts/Supporting Evidence | Opposing Party's Response/Supporting Evidence |
|---|---|---|
| **Claim for Relief: Administrative Procedure Act** | | |
| 1. Plaintiffs have standing. | Fact 1. Plaintiff Rise Economy relies on data provided by the CFPB under the Home Mortgage Disclosure Act (HMDA) and the CFPB's consumer complaint database to support its research and advocacy work with financial institutions, legislators, and regulators.<br><br>Gonzalez-Brito Decl. ¶¶ 5–9. | |
| | Fact 2. Without access to CFPB data, Rise Economy will have a more difficult time, and need to invest more resources into, publishing updated research, negotiating effective community benefits agreements with lenders, and advocating for consumers before regulators and legislators.<br><br>Gonzalez-Brito Decl. ¶¶ 6–9. | |
| | Fact 3. Rise Economy member Haven Services relies on the CFPB's consumer complaint process to help its clients receive relief from loan servicers, lenders, and other financial institutions.<br><br>Toriz Decl. ¶¶ 2–5. | |
| | Fact 4. Haven Services will be substantially impeded in its | |

| | | |
|---|---|---|
| | counseling work and would have to spend more time and resources to effectively achieve the same results from clients without help from the CFPB.<br><br>Toriz Decl. ¶ 6. | |
| | Fact 5. Plaintiff National Community Reinvestment Coalition (NCRC) regularly relies on the information contained in CFPB's consumer complaint database and HMDA data provided by the CFPB to support its research and advocacy work, and it plans to rely on small-business lending data under the CFPB's Section 1071 rule once the CFPB begins collecting and producing it.<br><br>Van Tol Decl. ¶¶ 4–10. | |
| | Fact 6. Without access to information provided by the CFPB, NCRC will have a more difficult time, and need to invest more resources into, publishing updated research, advocating as effectively with state and federal regulators, conducting research, analyses, and other activities.<br><br>Van Tol Decl. ¶¶ 7–10. | |
| | Fact 7. Plaintiff Woodstock Institute relies on timely access to updated HMDA data to support its Community Lending Data Portal, as well as its research and advocacy work.<br><br>Mendez Decl. ¶¶ 4–11. | |
| | Fact 8. Without access to data provided by the CFPB, Woodstock Institute would be | |

| | | |
|---|---|---|
| | unable to update its Community Lending Data Portal with new lending information, thereby reducing the value of its investment; and it would have less ability to negotiate with financial institutions to improve their lending practices.<br><br>Mendez Decl. ¶¶ 10–11. | |
| 2. Defendants have made a final decision not to request from the Board of Governors of the Federal Reserve System funding necessary to carry out the CFPB's authorities under federal consumer financial law. | Fact 9. Defendants have made a final decision not to request funding from the Board of Governors of the Federal Reserve System as necessary to carry out the CFPB's authorities under federal consumer financial law.<br><br>Request for Judicial Notice (RJN), Ex. K, CFPB, *CFPB Notifies Court it Cannot Lawfully Draw Funds from the Federal Reserve* (Nov. 11, 2025). | |
| | Fact 10. Defendants have announced that the CFPB "anticipates exhausting its currently available funds in early 2026."<br><br>RJN Ex. I, Notice of Potential Lapse in Appropriations, *NTEU v. Vought*, No. 1:25-cv-00381-ABJ (D.D.C. Nov. 10, 2025), ECF No. 145. | |
| 3. The best reading of § 5497 does not support Defendants. | Fact 11. Just one year ago, the CFPB recognized that reading "combined earnings" in § 5497 to mean "'revenue' or 'income' generated from labor, services, or investments … fits this statute to a T."<br><br>RJN Ex. P, Opp. to Mot. to Dismiss at 6, *CFPB v. Purpose Financial, In*, No. | |

| | | | |
|---|---|---|---|
| | | 24-3206 (D.S.C. Oct. 3, 2024), ECF 48 (internal quotation marks omitted). | |
| | | Fact 12. When it created the CFPB, Congress expressly aimed to establish a steady source of funding, rather than funding through an annual appropriation, because it deemed "the assurance of adequate funding" to be "absolutely essential."<br><br>S. Rep. No. 111-176, at 163 (2010). | |
| | | Fact 13. Congress gave the CFPB exclusive responsibility for deposit institutions and credit unions with assets exceeding $10 billion, with respect to more than a dozen statutes.<br><br>RJN Ex. Q, OIG, Coordination of Responsibilities Among the Consumer Financial Protection Bureau and the Prudential Regulators—Limited Scope Review 2, 13 (June 2015) | |
| | 4. The Federal Reserve System has generated sufficient earnings to fulfill any assessment for the Consumer Financial Protection Bureau. | Fact 14. The Federal Reserve System generated more than $160 billion in revenue in 2024.<br><br>RJN Ex. B, Federal Reserve, *Federal Reserve Banks Combined Financial Statements as of and for the Years Ended December 31, 2024 and 2023 and Independent Auditors' Report*. | |
| | | Fact 15. As of November 5, 2025, the Federal Reserve Banks reported a net deferred asset of $243,818,000.000. | |

| | | |
|---|---|---|
| | RJN Ex. F, Federal Reserve Balance Sheet: Factors Affecting Reserve Balances - H.4.1 (Nov. 6, 2025). | |
| | Fact 16. As of December 3, 2025, the Federal Reserve Banks reported a net deferred asset of $243,180,000.000.<br><br>RJN Ex. E, Federal Reserve Balance Sheet: Factors Affecting Reserve Balances - H.4.1 (Dec. 4, 2025). | |

I attest that the evidence cited herein fairly and accurately supports or disputes the facts as asserted.

DATED:  December 9, 2025            Respectfully submitted,

ROSEN BIEN GALVAN & GRUNFELD LLP


By:  *s/ Michael W. Bien*
     Michael W. Bien

Attorneys for Plaintiffs