Stephanie B. Garlock (*pro hac vice* application pending)
Allison M. Zieve (*pro hac vice* application pending)
Wendy Liu (*pro hac vice* application pending)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009-1001
Telephone:     (202) 588-1000
Email:         sgarlock@citizen.org
               azieve@citizen.org
               wliu@citizen.org

Michael W. Bien – 096891
Gay Crosthwait Grunfeld – 121944
Van Swearingen – 259809
Adrienne Spiegel – 330482
ROSEN BIEN GALVAN & GRUNFELD LLP
101 Mission Street, Sixth Floor
San Francisco, California  94105-1738
Telephone:     (415) 433-6830
Facsimile:     (415) 433-7104
Email:         mbien@rbgg.com
               ggrunfeld@rbgg.com
               vswearingen@rbgg.com
               aspiegel@rbgg.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RISE ECONOMY; NATIONAL COMMUNITY REINVESTMENT COALITION; and WOODSTOCK INSTITUTE, <br><br> Plaintiffs, <br><br> v. <br><br> RUSSELL VOUGHT, in his official capacity as Acting Director of the Consumer Financial Protection Bureau; and CONSUMER FINANCIAL PROTECTION BUREAU, <br><br> Defendants. | Case No. 5:25-cv-10481-EJD <br><br> **DECLARATION OF JESSE VAN TOL** |

I, Jesse Van Tol, declare as follows:

1.     I am the Chief Executive Officer of the National Community Reinvestment Coalition (NCRC).  I have personal knowledge of the facts set forth herein, and if called as a witness, I could competently so testify.

2.     NCRC is an association of more than 600 community-based organizations that promote access to basic banking services, affordable housing, entrepreneurship, job creation, and vibrant communities for America's working families. Its members include community reinvestment organizations, community development corporations, local and state government agencies, faith-based institutions, community organizing and civil rights groups, minority and women-owned business associations, and social service providers.

3.     Among other things, NCRC works with community leaders, policymakers, and financial institutions to champion fairness and end discrimination in lending, housing, and business. NCRC also engages in research, training, and advocacy on behalf of members; tests, monitors, and challenges discrimination in financial services and housing; and facilitates dialog between financial institutions and community networks to increase lending in neighborhoods that need it.

4.     NCRC uses information reported to, collected, and published by the Consumer Financial Protection Bureau (CFPB) in NCRC's work to promote fairness in lending and combat housing discrimination. For example, NCRC regularly relies on the information contained in CFPB's consumer complaint database to conduct research and publish reports, such as "COVID-19 and the CFPB Consumer Complaint Database,"[1] "NCRC Analysis of Bank Account Complaints by Zip Code,"[2] and "The CFPB's consumer complaint database tells a story about our economy that we need to hear."[3] In addition, NCRC regularly relies on the reports published by CFPB's Office of Research to research and analyze data.

5.     NCRC also regularly relies on CFPB's collection and publication of HMDA data for

---

[1] https://ncrc.org/covid-19-and-the-cfpb-consumer-complaint-database/.

[2] https://ncrc.org/wp-content/uploads/2013/10/analysis-by-zip-03.pdf.

[3] https://ncrc.org/the-cfpbs-consumer-complaint-database-tells-a-story-about-our-economy-we-need-to-hear/.

DECLARATION OF JESSE VAN TOL

NCRC's research, analyses, and publications, such as an NCRC series of research briefs on the mortgage market,[4] and reports such as "Displaced by Design: Fifty Years of Gentrification And Black Cultural Displacement in US Cities,"[5] "Redlining the Reservation: The Brutal Cost of Financial Services Inaccessibility in Native Communities,"[6] the "HMDA Longitudinal Dataset (1981–2021),"[7] "2020 HMDA Preliminary Analysis,"[8] "Decades of Disinvestment: Historic Redlining and Mortgage Lending Patterns,"[9] "Initial Analysis of 2021 HMDA Data: The Year That Homes Became ATMs Again,"[10] and "HMDA Data Reveals Refi Boom During Pandemic, But Not For Black And Hispanic Homeowners."[11] In addition, NCRC and its members rely on the HMDA data collected and published by CFPB in assisting local agencies, cities, and organizations in holding lending institutions accountable for inequitable practices. NCRC also uses the HMDA data collected and published by CFPB to submit comments in proposed rulemakings by various agencies, including the Office of the Comptroller of the Currency, Federal Deposit Insurance Corporation, and Federal Reserve,[12] and to provide analyses to state and local regulators. NCRC also researches and analyzes HMDA data and market trends for its members,[13] and provides technical assistance on analyzing HMDA data to its members and the public.[14]

6.      The CFPB customarily releases yearly HMDA data between March and June of the following year, with the earliest releases of data files by March 31. Based on NCRC's past work on

---

[4] "2025 NCRC Mortgage Market Series," https://ncrc.org/mortgage-market-report-series/.

[5] https://ncrc.org/displaced-by-design/.

[6] https://ncrc.org/redlining-the-reservation-the-brutal-cost-of-financial-services-inaccessibility-in-native-communities/.

[7] https://ncrc.org/hld/.

[8] https://ncrc.org/2020-hmda-preliminary-analysis/.

[9] https://ncrc.org/decades-of-disinvestment/.

[10] https://ncrc.org/initial-analysis-of-2021-hmda-data-the-year-that-homes-became-atms-again/.

[11] https://ncrc.org/hmda-data-reveals-refi-boom-during-pandemic-but-not-for-black-and-hispanic-homeowners/.

[12] *E.g.*, https://www.fdic.gov/system/files/2024-06/2022-community-reinvestment-act-3064-af81-c-097.pdf.

[13] *E.g.*, https://ncrc.org/event/member-webinar-building-ai-supported-research-reports/.

[14] https://ncrc.org/ncrcs-hmda-2018-methodology-how-to-calculate-race-and-ethnicity/.

HMDA data, I understand that CFPB staff are essential to the collection, processing, and publication of HMDA data. If CFPB staff are not working to provide technical assistance to filers and maintain submission portals in January and February, lenders may not be able to timely and accurately submit HDMA data. And if CFPB staff are not working to process submitted information, check them for accuracy, and clean the data sets to protect for personal privacy, CFPB will not be able to release 2025 HMDA data as scheduled in March of next year.

7.     The inevitable delay in the release of HMDA data, once the CFPB lacks funds to operate, will impede NCRC's work in several ways.

8.     For instance, without timely access to the research and information compiled and published by CFPB—including the HMDA data—NCRC cannot conduct the research, analyses, and report-writing activities that are essential to its work, and NCRC's members cannot effectively hold lending institutions accountable for inequitable practices.

9.     In addition, a lack of timely access to HMDA data in particular harms NCRC's ability to receive grant funding for its activities. In its grant applications to various foundations and other non-federal entities, NCRC often highlights its ability to analyze HMDA data to identify patterns and better target unfair and discriminatory lending. Without grant funding, NCRC's ability to perform its work is negatively impacted.

10.     In addition, NCRC has long been awaiting the publication of small business lending data under the CFPB's Section 1071 Rule. The CFPB's rule, finalized in 2023, would have provided access to first-of-its-kind information to ensure that small business owners and entrepreneurs are evaluated on their individual merit, free from presumptions, inadvertent bias or outright discrimination. NCRC would use these data on small business lending to similarly inform its advocacy with financial institutions and federal regulators. Without funding for the CFPB to continue its implementation work, NCRC will be forced to wait longer to access this critical information.

//

//

//

DECLARATION OF JESSE VAN TOL

1        I declare under penalty of perjury under the laws of the United States of America that the

2    foregoing is true and correct, and that this declaration is executed in New York, NY, this 8th day of

3    December, 2025.

4

5

6                                 Jesse Van Tol

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF JESSE VAN TOL